**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| NORMAN J. CERCOPLY, ) | |
| ) | C/A No.: 4:11-02186-TER |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying, in part, Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

**I. PROCEDURAL HISTORY**

The Plaintiff, Norman Cercoply, filed applications for DIB alleging disability since September 21, 2009. The applications were denied initially and upon reconsideration. A request for hearing was timely filed. A hearing was held by an Administrative Law Judge ("ALJ") on September 23, 2009. Plaintiff was represented by counsel and testified at the hearing along with a vocational expert ("VE"). The Administrative Law Judge (ALJ) found in a decision dated November 19, 2009, that Plaintiff was not disabled within the meaning of the Act prior to September 21, 2009, but that he became disabled as of that date. The Appeals Council denied Plaintiff's request for review of the hearing decision. As the Appeals Council denied Plaintiff's subsequent request for review of the ALJ's decision (Tr. 1-8), the ALJ's decision became the Commissioner's final

decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. § 404.981.

## II.  STATEMENT OF RELEVANT FACTS

Plaintiff was born on September 21, 1954, and was 54 years old on the date of the hearing. (Tr. 31). Plaintiff has a high school education and past relevant work as a commercial hardware installer and installation manager.

## III.  DISABILITY ANALYSIS

The Plaintiff's argument consists of the following:

(1)  The ALJ failed to resolve fatal conflicts between the VE testimony and the DOT in Violation of Social Security Ruling 00-4p.

(Plaintiff's brief).

In the decision of November 19, 2009, the ALJ found the following:

1. The claimant will meet the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq*.).

3. Since the alleged onset date of disability, May 20, 2007, the claimant has had the following severe impairment: retinal detachment (20 CFR 404.1520(c)).

4. Since the alleged onset date of disability, May 20, 2007, the claimant has not had an impairment or combination of impairments that met or medically equaled the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional

       capacity to perform light work as defined in 20 CFR 404.1567(b). He is unable to perform work requiring climbing ropes or ladders, and must avoid moving machinery. He is unable to perform jobs requiring depth perception, use of vision on the right side, fine visual acuity and working within crowds of people.

6. Since May 20, 2007, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).

7. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On September 21, 2009, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. 9. Prior to September 21, 2009, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Beginning on September 21, 2009, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to September 21, 2009, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, their were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. Beginning on September 21, 2009, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not jobs that exist in significant numbers in the national economy that the clamant could perform (20 CFR 404.1560(c) and 404.1566).

12. The claimant was not disabled prior to September 21, 2009 (20 CFR 404.1520(g)), but became disabled on that date and has continued to be disabled through the date of this decision

(20 CFR 404.1520(g)).

(Tr. 18-24).

## IV. ANALYSIS

As previously stated, Plaintiff argues that the vocational testimony ("VE") is contradicted by the Dictionary of Occupational Titles (DOT) and the ALJ failed to recognize or resolve the inconsistency. Plaintiff asserts the ALJ prefaced the hypothetical question by instructing the VE that he would assume the responses to be consistent with the DOT unless the VE informed him otherwise. The VE named three jobs the Plaintiff could perform based on the hypothetical stating that they did not require fine visual acuity because they only required a worker to see large items. (Plaintiff's brief, p. 13-14). Plaintiff argues that his counsel submitted a post hearing brief to the ALJ in which he "pointed out that the DOT/SCO job descriptions for the jobs cited by the VE showed that 'near acuity' was required either 'frequently' or 'constantly'; that the jobs required the ability to read at the rate of 95 to 120 words per minute; and that the jobs required the ability to compare similarities and differences between words and between series of numbers. (Tr. 224-40)." (Plaintiff's brief, p. 14). However, Plaintiff contends that the ALJ completely ignored the argument and concluded that the jobs cited by the VE could be performed despite the significant visual impairments posed in the hypothetical question. Plaintiff submitted the deposition of Benson Hecker, Ph.D., dated March 23, 2011, to the Appeals Council which made it a part of the administrative record. Dr. Hecker confirmed that the jobs cited by the VE at the hearing could not be performed with the visual limitations in the ALJ's RFC findings. Therefore, Plaintiff argues that there is no substantial evidence to support the ALJ's conclusion that there was a significant number

4

of jobs in the national economy that he could perform before he attained age 55 and that the new vocational evidence submitted to the Appeals Council shows Plaintiff has been continuously disabled since May 20, 2007. (Plaintiff's brief, p. 15). Additionally, Plaintiff requests that this case be reversed outright as opposed to remanded arguing it would serve no useful purpose to remand the case as the undisputed facts are fully developed and the vocational evidence, including the DOT/SCO, show that the ALJ failed to meet her burden of proof at step five of the sequential evaluation as the ALJ's own RFC findings would preclude all unskilled work in the national economy.

Defendant argues that there was no conflict with respect to at least one of the cited jobs[1] at issue. Defendant asserts that the Plaintiff failed to carry his burden of demonstrating he was harmed by the ALJ's failure to affirmatively inquire of the VE whether a conflict existed between her testimony and the DOT. Defendant contends that garment sorter requires sorting finished garments, such as shirts, dresses, and pajamas, according to tags and labels, and folding and packaging garments in boxes and bags. Defendants argues as follows

> . . . the size of objects Plaintiff could see, rather than the distance at which he could see them clearly, was obviously the ALJ's focus in his limitations; and the more technical near vision, or clarity of vision at 20 inches or less, to which the DOT refers and which the jobs at issue all require, does not necessarily comport with the more pragmatic fine acuity, or essentially simply seeing very small things to which the ALJ and the vocational expert referred and which at least the job of garment sorter arguably does not significantly require. The mere fact that the DOT does not address certain job characteristics an ALJ may posit and a vocational expert must call upon his or her expertise to interpret, does not necessarily establish a conflict between the two sources, but rather, a void in the DOT's formation that an ALJ should be entitled to fill via vocational expert knowledge.

(Defendant's brief, p. 13).

---

[1] Garment sorter. DOT 222.687-014.

In reply, Plaintiff argues that the Defendant's post hac rationalizations should be rejected. For example, Plaintiff argues that the ALJ never discussed the arguments raised for the first time by the Defendant that "'fine visual acuity' (the ALJ's RFC finding) is different 'from near acuity' (the DOT visual requirement)." (Plaintiff's reply brief, p. 2). Additionally, Plaintiff argues that the Defendant's detailed argument as to why the visual requirements of the garment sorter job including reading tags and labels, were not precluded by the ALJ's RFC finding of no fine visual acuity is also post hac rationalization as it was not discussed by the ALJ. Plaintiff further asserts that after the hearing, counsel discovered the discrepancy between the VE testimony and the DOT bringing it to the ALJ's attention. However, Plaintiff argues the ALJ failed to re-contact the VE to elicit a reasonable explanation for the conflict or call a different VE to explain whether Plaintiff could actually perform the jobs cited, thus failing to meet her burden of proving Plaintiff capable of performing other work in the national economy before September 21, 2009.

A review of SSR 00-4p reveals that if there is a conflict between the VE testimony and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying upon the VE evidence to support a decision about whether a claimant is disabled. Specifically, SSR 00-4p reads as follows:

> This Ruling clarifies our standards for the use of vocational experts (VEs) who provide evidence at hearings before administrative law judges (ALJs), vocational specialists (VSs) who provide evidence to disability determination services (DDS) adjudicators, and other reliable sources of occupational information in the evaluation of disability claims. In particular, this ruling emphasizes that before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised

> Dictionary of Occupational Titles (SCO), published by the Department of Labor, and explain in the determination or decision how any conflict that has been identified was resolved.

(SSR 00-4p).

The ALJ found that in April 2009, Dr. Jablon reported that:

> . . . the claimant's visual acuity in the right eye measured count fingers, and vision in the left eye measured 20/60. Although the retina remained attached, there was extensive and permanent retinal scarring limiting the claimant's vision. The doctor indicated that the claimant would be unable to perform activities requiring good acuity and depth perception, including operating machinery or other activities in the work place that could be hazardous with poor depth perception and limited vision. In a subsequent letter dated September 4, 2009 Dr. Jablon added that the claimant was limited in this ability to read for long periods of time.

(Tr. 21).

The ALJ stated that he gave significant weight to the opinion of Dr. Jablon and that the RFC was consistent with the statements by Dr. Jablon. (Tr. 22). The ALJ found the Plaintiff has the RFC to perform light work with the limitations of inability to perform work requiring climbing ropes or ladders, and must avoid moving machinery, unable to perform jobs requiring depth perception, use of vision on the right side and *fine* visual acuity and working within crowds of people. (Tr. 21). The VE cited three jobs to which the ALJ relied. Dr. Hecker testified in his deposition that based on Dr. Jablon's opinion[2] which the ALJ gave great weight, Plaintiff would not be able to perform any of

---

[2] Dr. Jablon, Plaintiff's treating neuro-ophthalmologist, completed a statement dated September 4, 2009, stating that Plaintiff suffered a retinal detachment in the right eye requiring a "pars plana vitrectomy, scleral buckle, and intraocular gas placement in May 2007." (Tr. 358). Dr. Jablon further opined as follows:

> Given his severely distorted vision and legal blindness in the right eye at the count fingers level, his daily activities are severely limited from a visual standpoint. He has two disparaging images being sent

7

the jobs cited by the VE.

As to the garment sorter[3], Dr. Hecker stated that based on his own personal observance of these jobs, it would require ". . . good visual acuity for spotting blemishes, sizes, shapes. And they require frequent and constant use of fine and/or gross visual acuity. Eight hours a day, five days a week, regularly." (Tr. 369). Even though Plaintiff's counsel submitted a letter to the ALJ after the hearing pointing out the inconsistencies, the ALJ did not subsequently question the VE regarding the inconsistencies in an attempt to resolve them or discuss the inconsistencies in her decision. Furthermore, additional VE testimony by Dr. Hecker discussing the inconsistencies was presented to the Appeals Council which was made a part of the record but not discussed by the Appeals Council. Defendant argues that the ALJ's visual restriction in his RFC addressed the size of the object rather than the distance of the object. However, that explanation is not within the ALJ's

> to his brain, one a distorted and different sized image from the right and the more normal image in the left. Even so, his vision is limited at 20/60 in the left eye. With these two disparaging images, clearly he has limited stereopsis and depth perception, In addition, extended times of focusing and reading are difficult and will remain so given that we do not expect any further visual recovery in the right eye. Although I cannot put a word per minute number on his limitation, I can say that his ability to read for long times is severely lower than average. In my previous correspondent, I did mention the danger in him working in any environment that requires good depth perception, as he is more prone to falls and mistakes while working with machinery.

(Tr. 358).

---

[3] In the Defendant's brief, it is admitted that there were conflicts with the two other jobs (machine tender and sorter) named by the VE. Therefore, the only job remaining that was cited by the VE is that of garment sorter.

decision. To that end, it is a post-hoc rationalization, which the Court cannot consider. See Golembiewski v. Barnhart, 322 F.3d 912, 915-16 (7th Cir.2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); Steel v. Barnhart, 290 F.3d 936 (7th Cir.2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

Based on the above, this case is remanded for an explanation as to the conflict, and/or finding by the ALJ as to whether the occupation of garment sorter is in conflict with the testimony of the VE. If the ALJ finds there is a conflict, he should resolve the conflict or find that the Plaintiff is unable to perform any jobs in the national economy.

## V.  CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

ORDERED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

AND IT IS SO ORDERED.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

February 22, 2013
Florence, South Carolina

10